# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUSTIN MICHAEL ENRIGHT,** | : | **CIVIL NO. 1:14-CV-103** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Justin Michael Enright ("Enright"), an inmate formerly housed at

the United States Penitentiary at Lewisburg ("USP Lewisburg"), Pennsylvania,

commenced this action on January 17, 2014, pursuing both civil rights claims and

Federal Tort Claims Act ("FTCA") claims. (Doc. 1). The matter is presently

proceeding *via* an amended complaint (Doc. 20), wherein Enright names the

following defendants: Perry County, Commissioner Brenda Benner, Commissioner

Stephen Naylor, Commissioner Paul Rudy, Jr., Perry County Prison, Warden David

Yeingst, (collectively, "Perry County defendants"), the United States of America

("United States"), and PrimeCare Medical, Inc. ("PrimeCare").[1] (Doc. 20 at 2-5).

Before the court is a motion (Doc. 33) to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) by the Perry County defendants, a motion (Doc. 35) to dismiss

---

[1] The amended complaint also names the following defendants: Unknown
Supervisor of the United States Marshals Service, Unknown Agent of the United
States Marshals Service, Unknown Deputy Warden of Perry County Prison, and
Unknown Nurse. (Doc. 20 at 2, 4, 5). As discussed herein, these defendants are
potentially subject to dismissal pursuant to Federal Rule of Civil Procedure 4(m).

pursuant to Federal Rule of Civil Procedure 12(b), or for summary judgment pursuant to Federal Rule of Civil Procedure 56, by the United States, and a motion (Doc. 37) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by PrimeCare Medical, Inc.  For the reasons set forth below, the court will grant each of the pending motions.

## I.     <u>Standard of Review</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); <u>see</u> <u>also</u> <u>*In re* Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  <u>See</u>

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u> (alterations in original) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. <u>Id.</u>; <u>see also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

## II. <u>Allegations of the Amended Complaint</u>

Enright alleges that he was arrested by the United States Marshals Service ("USMS") on May 31, 2011, and was initially housed at the Mecklenburg County Jail. (Doc. 20 at 7). At the time of his arrest, Enright was in generally good health, though he suffered from a broken leg and required a cane to walk. (<u>Id.</u>) Enright was transferred to the Perry County Prison on or about June 30, 2011. (<u>Id.</u>) He underwent an "intake physical" upon arrival at the Perry County Prison. (<u>Id.</u>) Other than needing a cane to walk, Enright again claims that he was in generally good health. (<u>Id.</u>) Enright alleges that, although his cane was declared medically necessary, prison officials confiscated the cane on several occasions, hindering his

ability to exercise and resulting in weight gain. (Id.) He alleges that the Warden or Unknown Deputy Warden ordered the confiscation of his cane. (Id.)

As set forth below, Enright alleges that during the last half of 2011 and the first half of 2012, he received inadequate medical care at the Perry County Prison. (Id. at 7, 11-13). First, Enright claims that he suffers from several mental disorders, including borderline personality disorder, major depressive disorder, anxiety disorders, agoraphobia, and possible schizoaffective disorder. (Id. at 6). Enright alleges that he was "only sporadically treated" for his mental disorders and that his medications were frequently changed by prison officials, "actually exacerbating his symptoms." (Id. at 6-7).

Second, Enright claims that he developed Type 2 diabetes between September 2011 and November 2011. (Id. at 8-9). He asserts that correctional officers at the Perry County Prison dispensed medication, monitored his blood sugar levels, and administered insulin. (Id.) Enright alleges that, despite receiving insulin shots on an "ongoing basis," his condition deteriorated and he ultimately suffered a diabetic coma on January 5, 2012. (Id. at 9). Enright was allegedly transported to the Carlisle Hospital, though he claims there was a delay in calling an ambulance. (Id.) Enright remained hospitalized for approximately two (2) weeks. (Id. at 9-10). He allegedly was in intensive care for one (1) week and in rehabilitation for one (1) week. (Id.) As a result of the diabetic coma, Enright claims that he developed neuropathy in his lower left leg, nerve damage causing paralysis in his left leg, nerve pain, blood blisters, and a lip abrasion. (Id.)

Finally, Enright asserts that the USMS "force[d]" the Carlisle Hospital to discharge him, "in spite of the doctor's recommendation." (Id. at 10). He claims that he was discharged without receiving a leg brace or any training how to walk in a brace. (Id.) Enright alleges that when he returned to the Perry County Prison, he was kept in an observation cell, denied his belongings, and was not provided with assistive devices for ambulation. (Id. at 11). During this time, Enright alleges that he had to "hop" around his cell. (Id.) Enright was eventually fitted for, and provided with, a leg brace. (Id.) After spending time in the observation cell, Enright asserts that he was transferred to the medical block. (Id.) Enright further states that correctional officers continued to dispense his medication and monitor his blood sugar levels. (Id.)

In his amended complaint, Enright asserts claims pursuant to the Federal Tort Claims Act, the Eighth and Fourteenth Amendments, and state law. (Id. at 11-13). For relief, he seeks monetary damages. (Id. at 14).

## III.   Perry County Defendants' Motion to Dismiss

### A.   Federal Law Claims

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

5

> in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### 1. *Perry County Prison*

As an initial matter, the court notes that the Perry County Prison is not a separate legal entity subject to suit under § 1983. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Sponsler v. Berks Cty. Prison, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995). Moreover, Enright "does not object to the dismissal of Perry County Prison as a party to this action." (Doc. 39 at 2). Hence, the court will dismiss Enright's claims against Perry County Prison with prejudice.

### 2. *Respondeat Superior and Monell Liability*

The Perry County defendants collectively argue that Enright fails to state a claim against them because they lack personal involvement in the alleged wrongs, and because Enright's allegations against them are based solely on the doctrine of *respondeat superior*. (Doc. 37 at 5-6). The Perry County defendants further assert that Enright's amended complaint fails to state a claim for municipal liability under Monell v. N.Y.C. Dep't of Social Servs., 436 U.S. 658 (1978). (Doc. 37 at 6-8). The court agrees with the Perry County defendants on both threshold points.

6

Regarding *respondeat superior* liability, it is well-established that:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). As the Supreme Court of the United States has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. . . . See Monell v. N.Y.C. Dep't of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Iqbal, 556 U.S. at 675.

Additionally, for purposes of Eighth Amendment medical claims, non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64,

69 (3d Cir. 1993). The rationale for this rule has been aptly explained by the United

States Court of Appeals for the Third Circuit as follows:

> If a prisoner is under the care of medical experts . . . , a
> non-medical prison official will generally be justified in
> believing that the prisoner is in capable hands. This
> follows naturally from the division of labor within a
> prison. Inmate health and safety is promoted by dividing
> responsibility for various aspects of inmate life among
> guards, administrators, physicians, and so on. Holding a
> non-medical prison official liable in a case where a
> prisoner was under a physician's care would strain this
> division of labor. Moreover, under such a regime, non-
> medical officials could even have a perverse incentive not
> to delegate treatment responsibility to the very physicians
> most likely to be able to help prisoners, for fear of
> vicarious liability. Accordingly, we conclude that, absent
> a reason to believe (or actual knowledge) that prison
> doctors or their assistants are mistreating (or not treating)
> a prisoner, a non-medical prison official . . . will not be
> chargeable with the Eighth Amendment scienter
> requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Courts have repeatedly held that,

absent some reason to believe that prison medical staff are mistreating prisoners,

non-medical corrections staff who refer inmate medical complaints to physicians

may not be held personally liable for medically-based Eighth Amendment claims.

See, e.g., id. at 236-37 (citing Durmer, 991 F.2d at 69); Garvey v. Martinez, No. 08-

2217, 2010 WL 569852, at *6-7 (M.D. Pa. 2010); Hodge v. United States, No. 06-1622,

2007 WL 2571938, at *5-6 (M.D. Pa. 2007). Moreover, a claim of a constitutional

deprivation cannot be premised merely on the fact that the named defendant was

the prison warden, or a prison supervisor, when the incidents set forth in the

complaint occurred. See Rode, 845 F.2d at 1207.

Applying these constitutional benchmarks, it is apparent that, with respect to the non-medical defendants—Perry County, Commissioners Benner, Naylor, and Rudy, and Warden Yeingst—Enright's amended complaint fails to state a claim upon which relief can be granted. A review of the amended complaint confirms that there are no specific assertions that any of the Perry County defendants had any personal involvement in the purported violations of Enright's rights under the Eighth Amendment. (See generally Doc. 20). Enright does not allege that any of the Perry County defendants administered medication or participated in any of his physical therapy; nor does Enright assert that the Perry County defendants were aware of or acquiesced in purported Eight Amendment violations by prison staff. Enright's amended complaint is, in essence, nothing more than an assertion of *respondeat superior* liability which seeks to hold the Perry County defendants liable based on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. See Rode, 845 F.2d at 1207. Accordingly, Enright's deliberate indifference claim against the Perry County defendants, to the extent it relies on a *respondeat superior* theory of liability, will be dismissed.

To the extent Enright seeks to assert a municipal liability claim against Perry County, the same must also be dismissed. A municipality may be held liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of constitutional rights or 'causes' a person 'to be subjected' to such deprivation." Monell, 436 U.S. at 692. Thus, a plaintiff seeking to impose constitutional liability on a municipality must meet the difficult burden of proving that "action pursuant to official municipal policy" caused their injury. Id. at 691, 694. This requires the

plaintiff to identify an official or unofficial municipal policy—including "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law," <u>Connick v. Thompson</u>, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011) (citations omitted), and demonstrate that said policy was the "moving force" behind his injury, <u>Berg v. Cty. of Allegheny</u>, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 404 (1997)).

The Perry County defendants contend that Enright "does not identify any specific policy, practice, or custom promulgated by Perry County Defendants that led to the harm he alleges." (Doc. 34 at 8). Enright counters by broadly asserting that the Perry County defendants are on the prison board and are necessarily "responsible for such policies as budget, staffing, and training of all prison staff," which ultimately led to his injuries. (Doc. 39 at 3). Enright's allegations and his response to defendants' motion are conclusory and, as such, insufficient to carry his <u>Monell</u> claim past Rule 12(b)(6) scrutiny. <u>See</u> <u>Phillips</u>, 515 F.3d at 231 (observing that, for purposes of Rule 12(b)(6), "a formulaic recitation of the elements of a cause of action will not do").

Enright does not identify with specificity any municipal policy, practice, pattern, or custom of permitting prison staff to engage in constitutional violations. Although he alleges broadly that the Perry County defendants "were responsible for the customs, policies, procedures, and practices concerning medical staffing at PCP" and policies concerning "what type and how much training correctional officers were given," (Doc. 20 at 8), the amended complaint is devoid of facts

10

identifying a specific policy or custom to which Enright attributes his injury.  Cf.
McTernan v. City of York, 564 F.3d 636, 657-58 (3d Cir. 2009) (finding that plaintiff
"failed to satisfy the 'rigorous standards of culpability and causation' required for
municipal liability" when plaintiff did not "specify the relevant 'custom' or 'policy'"
and did not "allege conduct by a municipal decisionmaker" or "knowledge by a
municipal decisionmaker").  Moreover, Enright does not allege that such policy—to
the extent it might exist—was the "moving force" behind his injury.  Berg, 219 F.3d
at 275-76 (quoting Brown, 520 U.S. at 404).  Enright thus cannot maintain a Monell
claim against the Perry County defendants, and this claim will be dismissed.

### 3.    *Deliberate Indifference to Medical Needs*

Finally, the court concludes that the "deliberate indifference" described
throughout Enright's complaint simply does not rise to the level of a cognizable
constitutional violation.  Enright alleges that the Perry County defendants were
deliberately indifferent to his serious medical needs in violation of the Eighth and
Fourteenth Amendments.[2]  He alleges that his medical condition deteriorated while

---

[2] Enright sets forth a deliberate indifference claim based on his status as a
pretrial detainee as well as his status as a sentenced inmate.  (Doc. 20 at 12-13).
However, Enright does not indicate whether the incidents at issue occurred when
he was a pretrial detainee or a sentenced inmate.  Pretrial detainees are protected
by the Due Process Clause of the Fourteenth Amendment, not the Cruel and
Unusual Punishment Clause of the Eighth Amendment.  See Bell v. Wolfish, 441
U.S. 520, 535 n.16 (1979).  However, the Fourteenth Amendment provides "at least
as much protection as does the Eighth Amendment," and in cases involving
allegations of inadequate medical care, the Third Circuit Court of Appeals typically
reviews both claims using the Eighth Amendment standard.  Gannaway v. Berks
Cty. Prison, 439 F. App'x 86, 89 n.2 (3d Cir. 2011) (nonprecedential) (citing Natale v.
Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003)).  Thus, the same
standard applies to Enright's claims, and the court will dispose of these claims
pursuant to the Eighth Amendment.

he was confined at the Perry County Prison.  However, Enright fails to set forth any factual allegations that the Perry County defendants were deliberately indifferent to his medical needs.  For this additional reason, the court must dismiss Enright's claims against the Perry County defendants.

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976).  In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale, 318 F.3d at 582 (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  Id. (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis

12

or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Assuming arguendo that Enright's diabetes represents a serious medical need, the court must determine whether Enright has pled a deliberate indifference to that need.  The allegations in Enright's amended complaint clearly demonstrate that he received medical attention while housed at the Perry County Prison, and that the attention he received lacks the requisite deliberate indifference to support a § 1983 claim.  Enright acknowledges that a nurse was available every weekday from 7:30 a.m. to 3:30 p.m, and a physician's assistant was available on a biweekly basis.  (Doc. 20 at 8).  Further, Enright submitted an Inmate Observation Log, revealing that he received almost constant observation of his medical condition. (Doc. 39-1 at 3).  Enright also submitted a prison report indicating that prison staff referred a behavioral incident to the medical department for further evaluation. (Id. at 1).

By Enright's own account, he was provided both medication and physical therapy at the Perry County Prison.  (Doc. 20 at 11).  To the extent that Enright is dissatisfied with the fact that his physical therapy sessions were conducted in a "small medical examination room," and that correctional officers administered medication and monitored blood sugar levels, such allegations, at best, demonstrate Enright's disagreement with medical treatment and personnel.  (See Doc. 20 at 11). Though he may have preferred that his physical therapy was conducted in a larger

room and that different personnel administered his medication, such disagreement does not rise to the level of a cognizable Eighth Amendment claim. See Spruill, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation). This is particularly true in light of the fact that there are no allegations in the amended complaint that any of the Perry County defendants intentionally withheld medical treatment from Enright in order to inflict pain or harm upon him, nor is there any indication from Enright that he informed anyone at Perry County Prison that his condition was deteriorating. See Farmer, 685 F. Supp. at 1339; Rouse, 182 F.3d at 197.

The allegations in Enright's amended complaint amount to nothing more than a subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. See Carpenter v. Kloptoski, No. 08-CV-2233, 2012 WL 983565, at *6 (M.D. Pa. Mar. 22, 2012) (citing White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)) (observing that "a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference"). Claims of medical malpractice and disagreements as to the proper course of medical treatment simply do not suffice to satisfy the deliberate indifference standard. See Monmouth Cty., 834 F.2d at 346. Courts will not second guess whether a particular course of treatment is adequate or proper. See Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Based on the foregoing, Enright's amended complaint fails to articulate a plausible civil rights claim against the Perry County defendants.

**B.     State Law Claims**

Enright's state law claims against the Perry County defendants will also be

dismissed.  A district court may decline to exercise supplemental jurisdiction over a

state law claim or claims if the district court dismisses those claims over which it

has original jurisdiction.  Since the claims that form the basis of this court's

jurisdiction under 28 U.S.C. § 1331 will be dismissed, the court declines to exercise

supplemental jurisdiction.

**IV.     United States' Motion to Dismiss**[3]

The United States seeks dismissal of the amended complaint for lack of

subject matter jurisdiction because Enright failed to file an administrative tort

claim on any of the issues presented in his amended complaint.  (See Doc. 36).  In

---

[3] The United States first moves to dismiss Enright's amended complaint under the provisions of Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction on the basis that Enright failed to exhaust his administrative remedies with respect to his FTCA claim.  (See Docs. 35, 36).  A Rule 12(b)(1) motion may present as either a facial or a factual challenge to the court's subject matter jurisdiction.  See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  In reviewing a facial attack, the court may only consider the allegations of the complaint and documents referenced therein and attached thereto, viewing them in the light most favorable to the plaintiff.  See id.; PBGC v. White, 998 F.2d 1192, 1196 (3d Cir. 1993).  In reviewing a factual attack, the court may consider evidence outside the pleadings.  See Gotha v. United States, 115 F.3d 176, 178-79 (3d Cir.1997) (citing Mortensen, 549 F.2d at 891); Gould Electronics Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (footnote omitted), modified on other grounds by, Simon v. United States, 341 F.3d 193 (3d Cir. 2003).  The United States' motion raises a factual attack to the court's subject matter jurisdiction, arguing that the court lacks jurisdiction over this claim due to Enright's failure to exhaust his administrative remedies.  In such a factual challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," even where disputed material facts exist.  Mortensen, 549 F.2d at 891.  See also Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury).  Thus, the court will consider the instant motion to dismiss without converting it to a motion for summary judgment.

the alternative, the United States asserts that Enright failed to file a requisite certificate of merit, that any claims against the United States based on the alleged conduct of independent contractors at the Perry County Prison must be dismissed, and that sovereign immunity bars any constitutional claims against the United States. (See id.) The court finds that that first argument regarding lack of subject matter jurisdiction is dispositive of the motion, thus the alternative arguments need not be addressed.

The FTCA allows federal prisoners to pursue lawsuits against the United States in an effort to recover for personal injuries sustained during confinement by reason of negligence of government employees. See Berman v. United States, 205 F. Supp. 2d 362 (M.D. Pa. 2002) (Nealon, J.) (citing United States v. Muniz, 374 U.S. 150 (1963); 28 U.S.C. §1346(b)). The primary purpose of the FTCA is to "remove sovereign immunity of the United States from suits in tort, and with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." Id. (quoting Richards v. United States, 369 U.S. 1, 6 (1962); 28 U.S.C. §1346(b)).

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied thereby. The FTCA provides:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely."  Wilder v. Luzinski, 123 F. Supp. 2d 312, 313 (E.D. Pa. 2000) (citing McNeil v. United States, 508 U.S. 106, 111 (1993); Wujick v. Dale & Dale, 43 F.3d 790, 793-94 (3d Cir. 1994)).

Moreover, a claimant must abide by the strict time limitations codified in 28 U.S.C. § 2401(b) or the tort claim under the FTCA will be "forever barred."[4]  See Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971).  To sue the United States in district court and avoid violating the FTCA's express statute of limitations, a plaintiff must present the tort claim "in writing to the appropriate Federal agency within two years after such claim accrues . . . ."  28 U.S.C. § 2401(b); see also Bialowas, 443 F.2d at 1049.  Section 2401's "time bar is strictly construed."  Brown v. Camden Cty. Counsel, 2010 U.S. App. LEXIS 9826, at *6 (3d Cir. 2010) (citing Livera v. First Nat. State Bank of N.J., 879 F.2d 1186, 1195 (3d Cir. 1989)).

In the instant action, Enright did not file any administrative claims with the United States Marshals Service or the United States Department of Justice related to the incidents in the amended complaint.  (See Doc. 36 at 14; see also Doc. 36-5 ¶ 4

---

[4] Section 2401(b) provides in full:

> [A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

(Declaration of United States Marshals Service General Counsel) ("A review of the computerized case tracking system and a review of the open, closed and potential claim files on November 5, 2014, did not reveal any FTCA claims presented to the United States Marshals Service by plaintiff arising out of the incident described in the Amended Complaint."); Doc. 36-6 ¶ 3) (Declaration of United States Department of Justice paralegal) ("[T]here is no record of an administrative claim being presented by Justin Michael Enright.")).

Enright concedes in his amended complaint that he did not file an administrative claim with the United States Marshals Service. (Doc. 20 at 6). He explains that, because he is no longer incarcerated at Perry County Prison, "there are no administrative remedies available to [him], as pertaining to this case at this time. Further, administrative remedies do no[t] provide for financial compensation, which is all the Plaintiff can ask for in any case." (Id.) As is apparent from the record before the court, Enright failed to exhaust his administrative tort claim remedies, and his FTCA claim is therefore barred. See Lightfoot v. United States, 564 F.3d 625, 626-27 (3d Cir. 2009) (affirming the district court's dismissal of an FTCA claim for failure to timely and properly present administrative remedy). Consequently, the court does not have jurisdiction over Enright's FTCA claim. The court will grant the United States' motion to the extent it seeks dismissal of the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1).[5]

---

[5] The court notes that, because Enright's amended complaint pertains to events that occurred well over two years ago, Enright can no longer present a timely administrative claim to the USMS. (See Doc. 20 at 7, 11-13).

## V.    PrimeCare's Motion to Dismiss

In its motion to dismiss, PrimeCare asserts: first, that Enright filed his complaint beyond the applicable statute of limitations and, second, that Enright nonetheless fails to state a medical deliberate indifference claim against it. The court addresses PrimeCare's arguments *seriatim*.

### A.    Statute of Limitations

Defendants may raise a statute of limitations defense in a Rule 12(b)(6) motion when "the complaint facially shows noncompliance with the limitations period." McSpadden v. Wolfe, No. 07-1263, 2008 WL 910010, at *4 (E.D. Pa. 2008) (citing Oshiver, 38 F.3d at 1385 n.1). It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985); Urrutia v. Harrisburg Cty. Police Dept., 91 F.3d 451, 457 n.9 (3d Cir. 1996). In Pennsylvania, the statute of limitations for a personal injury action is two years. See 42 PA. CONS. STAT. § 5524.

However, the date when a cause of action accrues remains a question of federal law. Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995). Under federal law, a civil rights cause of action accrues—and the statute of limitations begins to run—when the plaintiff "knew or should have known of the injury upon which [the] action is based." Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998). In other words, the limitations period begins to run when a plaintiff has sufficient notice to place him on alert of the need to begin investigating. Gordon v. Lowell, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000). Under Gordon, a "claim

accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Id.

The instant allegations relate to inadequate treatment of Enright's diabetes from June 2011 through January 5, 2012. (Doc. 20 at 7-9). Thus, Enright plainly was on notice of the alleged violation of his rights at the very latest on January 5, 2012. (See id.) Enright did not file his complaint until January 17, 2014, more than two (2) years after the alleged inadequate medical treatment. In an attempt to justify his untimely filing, Enright states that he "barely remember[s]" the events surrounding his alleged injuries. (Doc. 45 at 7). Additionally, he maintains that the events relate to an "ongoing series of abuses, not a onetime event." (Id.) The court finds that Enright has essentially raised an equitable basis to excuse his untimely filing and, for the purpose of this memorandum, will presume that this action was timely filed.

**B.    Deliberate Indifference**

PrimeCare next asserts that Enright fails to allege any facts which could support a claim that it acted with deliberate indifference to his medical needs. As stated *supra*, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse, 182 F.3d at 197. In the context of medical care, the relevant inquiry is whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. See Monmouth Cty., 834 F.2d at 346.

In his amended complaint, Enright does not state facts demonstrating that PrimeCare denied him medical treatment. To the contrary, Enright acknowledges that he did receive medical care at the Perry County Prison. In its brief, PrimeCare

highlights Enright's admissions of the medical care he received while incarcerated, *to wit*:

    a.    His mental disorders were monitored by the medical staff with his medications "frequently changed." (Doc. 20 at Section C ¶ 2).

    b.    He was given an intake physical upon arrival at Perry County Prison. (Doc. 20 at Section C ¶ 4).

    c.    Medical personnel repeatedly declared his cane medically necessary. (Doc. 20 at Section C ¶ 6).

    d.    Medical personnel diagnosed him with Type 2 diabetes during his incarceration. (Doc. 20 at Section C ¶ 8).

    e.    His blood sugar levels were checked and he was administered insulin shots on an "ongoing" basis. (Doc. 20 at Section C ¶¶ 12, 13, 14).

    f.    Medical personnel called an ambulance to transport him when he was allegedly found unresponsive on January 5, 2012. (Doc. 20 at Section C ¶ 14).

    g.    After his discharge from Carlisle Medical Center, a physical therapist came to the Perry County Prison to provide therapy for his leg. (Doc. 20 at Section C ¶ 22).

    h.    He was fitted for and provided with a leg brace. (Doc. 20 at Section C ¶ 23).

    i.    He was given medications. (Doc. 20 at Section C ¶¶ 11, 24).

(Doc. 38 at 7).

It is clear that Enright received medical care at the Perry County Prison. Enright's allegations amount to nothing more than his subjective disagreement with that medical care. Thus, there is no basis for a deliberate indifference claim against

PrimeCare.  See *supra* at 11-14.  The court will grant PrimeCare's motion to dismiss this claim.

### C.    **Monell Claim**

To the extent that Enright attempts to establish liability against PrimeCare on the basis that it employs members of the Perry County Prison medical staff, this claim must be dismissed.  To establish a viable § 1983 claim against a private corporate entity such as PrimeCare, a plaintiff must allege that the entity had a policy, practice, or custom which caused injury to the plaintiff.  See Adonai-Adoni v. King, No. 07-3689, 2009 WL 890683, at *2 (E.D. Pa. 2009) (noting that a private medical provider can only be liable under § 1983 if claim rests "upon some policy, practice or custom:); see also Carpenter, 2010 WL 891825, at *8 (concluding that a § 1983 claim against a private medical service solely on the basis that it was responsible for providing health care is subject to dismissal).

Enright alleges that he received inadequate medical treatment for his diabetes, including inadequate treatment for his leg injury.  However, Enright's amended complaint is devoid of facts demonstrating that any perceived deficiency in his medical treatment was the result of PrimeCare's policies, customs, or practices.  The only allegations against PrimeCare are that it did not supervise nurses and "did not appear to be maintaining . . . supervision" of Enright's blood sugar levels and insulin administration.  (Doc. 20 at 8).  Enright fails to establish that PrimeCare maintained a policy or practice that violated his constitutional rights, and appears to sue PrimeCare simply as the entity responsible for providing

prison health care.  Accordingly, Enright's § 1983 claim against PrimeCare will be dismissed.

**D.      State Law Claims**

Enright's state law claims against PrimeCare will also be dismissed.  As previously noted, a district court may decline to exercise supplemental jurisdiction over a state law claim or claims if the district court dismisses those claims over which it has original jurisdiction.  Since the claims that form the basis of this court's jurisdiction under 28 U.S.C. § 1331 will be dismissed, the court declines to exercise supplemental jurisdiction over Enright's related state law claims.

**VI.     Leave to Amend**

The court concludes that leave to amend is appropriate with respect to the bulk of Enright's claims.  When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  In the matter *sub judice*, several of Enright's claims are *legally* flawed and thus incurable; as such, the court will dismiss those claims—any claim against Perry County Prison, and his FTCA claim against the United States—with prejudice.  However, the court will permit Enright

to amend the balance of his amended complaint in attempt to cure the manifest factual deficiencies identified herein.

## VII.    Federal Rule of Civil Procedure 4(m)

Federal Rule of Civil Procedure 4(m) provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Defendants Unknown Supervisor of the United States Marshals Service, Unknown Agent of the United States Marshals Service, Unknown Deputy Warden of Perry County Prison, and Unknown Nurse, have never been properly identified or served in this case, nor have any of them had an attorney enter an appearance on his or her behalf.  These defendants were named in the original complaint, as well as in the amended complaint that was filed on July 21, 2014.  More than a year has passed since such time, and it appears that Enright has abandoned the action against these defendants.  As a result, in accordance with Rule 4(m), the court will direct Enright to show cause within fourteen (14) days why said defendants should not be dismissed from this action.  See Mei Ying Liu v. Oriental Buffet, 134 F. App'x 544, 546-47 (3d Cir. 2005) (nonprecedential) (holding that under Federal Rule 4(m), "prior notice is required irrespective of whether the plaintiff is prejudiced by the dismissal").

## VIII.  Conclusion

For the reasons set forth above, defendants' motions (Docs. 33, 35, 37) to dismiss will be granted.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:  August 28, 2015