**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUSTIN MICHAEL ENRIGHT,** | : | **CIVIL ACTION NO. 1:14-CV-103** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Justin Michael Enright ("Enright"), an inmate formerly housed at the Perry County Prison, New Bloomfield, Pennsylvania, commenced this action on January 17, 2014.  (Doc. 1).  The matter is presently proceeding *via* a second amended complaint (Doc. 58), wherein Enright alleges that he received inadequate medical care at the Perry County Prison, resulting in a violation of his rights under federal and state law, and the Americans with Disabilities Act ("ADA").  Named as defendants are Perry County, Commissioner Brenda Benner, Commissioner Stephen Naylor, Commissioner Paul Rudy, Jr., Warden David Yeingst, Deputy Warden Long (collectively, "Perry County defendants"), and PrimeCare Medical, Inc. ("PrimeCare"), and Nurse Beth Heckman (collectively, "medical defendants").  Before the court are two motions (Docs. 59, 72) to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6) by the Perry County defendants,[1] and a motion (Doc. 70) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by the medical defendants.  For the reasons set forth below, the court will grant in part and deny in part each of the pending motions.

## I.    <u>Standard of Review</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); <u>see</u> <u>also</u> <u>In re</u> <u>Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp.</u>

---

[1] Defendant Long was not a party to this action at the time the Perry County defendants filed their motion (Doc. 59) to dismiss.  Therefore, defendant Long's motion (Doc. 72) to dismiss was filed separately from the other Perry County defendants.  The motions raise the same arguments and the court will address both motions jointly.

v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the

face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See

Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step,

"the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"

Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal

elements of a claim should be separated; well-pleaded facts must be accepted as

true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v.

UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual

allegations have been isolated, the court must determine whether they are sufficient

to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550

U.S. at 556); Twombly, 550 U.S. at 555.  A claim "has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S.

at 678.

## II.  Allegations of the Second Amended Complaint

Enright alleges that he was arrested by the United States Marshals Service

on May 31, 2011 and was initially housed at Mecklenburg County Jail.  (Doc. 58 at 5).

At the time of his arrest, Enright was in generally good health, though he suffered

from a broken leg and required a cane to walk.  (Id.)  Enright was transferred to

Perry County Prison on or about June 28, 2011.  (Id.)  Upon arrival to the prison,

Enright underwent a physical examination.  (Id.)  Other than needing a cane to

walk, Enright again claims that he was in generally good health. (Id.)  Enright

allegedly informed prison medical staff that he had a family history of diabetes

mellitus.  (Id.)  Shortly after his arrival, Enright underwent an x-ray of his leg, which purportedly alerted prison staff of his broken leg and his need for an assistive walking device.  (Id. at 6).

Enright alleges that prison officials confiscated his cane on several occasions. (Id.)  He alleges that Warden Yeingst or Deputy Warden Long ordered the confiscation of his cane.  (Id.)  Without the assistance of his cane, Enright experienced difficulty walking and exercising, which ultimately resulted in weight gain.  (Id.)

As set forth below, Enright asserts that from the end of 2011 through the beginning of 2012, he received inadequate medical care at Perry County Prison. (Id. at 5-13).  Enright claims that beginning in November 2011, he suffered from substantial weight gain, extreme confusion, anxiety, dizziness, blurry vision, lack of fine motor control, lethargy, excessive thirst, frequent urination, vomiting, and shortness of breath.  (Id. at 6).  On December 25, 2011, Enright's confusion worsened, and he was unable to identify the date or time.  (Id.)  Medical staff were purportedly not available to assess Enright's alleged mental confusion for a period of three days.  (Id.)  On December 28, 2011, a physician assistant examined Enright and ordered lab work.  (Id. at 7).  Enright asserts that, on December 30, 2011, his blood sugar level was 419.  (Id.)  The lab work was forwarded to PrimeCare personnel the following day.  (Id.)

On January 4, 2012, a physician assistant examined Enright, diagnosed diabetes mellitus, and ordered an insulin regimen.  (Id.)  On January 5, 2012, Enright was found unresponsive and brought to the medical department.  (Id.)  Per

policy, the nurse in the medical department called PrimeCare for a consultation, and Enright was subsequently transported to the hospital *via* ambulance. (Id.) Enright alleges that more than ninety minutes elapsed from the time the ambulance was called to his arrival at the hospital. (Id.) Once at the hospital, Enright was admitted to the intensive care unit with pneumonia and diabetic ketoacidosis. (Id. at 7-8). Enright remained in a diabetic coma until January 11, 2012. (Id. at 8). He was thereafter transferred to a rehabilitation unit at the hospital. (Id.) Doctors at the hospital diagnosed Enright with drop foot, secondary to mononeuropathy, due to diabetes mellitus. (Id.) The doctors ordered physical and occupational therapy, and recommended that Enright use a leg brace and walker to help with ambulation. (Id. at 8-9).

Enright alleges that Warden Yeingst, Deputy Warden Long, and members of the United States Marshals Service pressured the hospital staff to authorize his release. (Id.) Enright asserts that the Marshals Service ultimately "force[d]" the hospital to discharge him. (Id.) On January 17, 2012, Enright was discharged from the hospital. (Id. at 9). Enright alleges that when he returned to Perry County Prison, he was kept in an observation cell, denied his belongings, and was not provided a walker. (Id. at 10).

On January 25, 2012, Enright was treated by a physician assistant and it was noted that his blood sugar levels were controlled with insulin, and there were no problems with cognition or alertness. (Id.) Enright claims that these findings are "completely untrue," and he remained confused and lethargic at that time. (Id.) Enright asserts that correctional officers at Perry County Prison dispensed

medication, monitored his blood sugar levels, administered insulin, and observed him while on medical watch status, despite having no medical training.  (Id. at 11-12).

During his incarceration at Perry County Prison, Enright alleges that his blood sugar levels dropped on several occasions.  (Id. at 10-11).  PrimeCare policy allegedly provides that a doctor will be called when an inmate's blood sugar drops below eighty.  (Id.)  Enright claims that he suffered from such low blood sugar levels on at least sixteen occasions, but a doctor was never called for a consultation or treatment.  (Id.)

Enright alleges that Perry County Prison provided "minimal medical coverage."  (Id.)  He claims that PrimeCare only provides one nurse to the facility for forty hours per week, and the nurse was frequently absent.  (Id.)  Defendants Yeingst and Long allegedly explained that state law allows the prison to operate without medical staff on duty for a set number of hours.  (Id. at 12).  Enright asserts that there is no policy in effect to ensure medical coverage on holidays, evenings or weekends, or when medical staff members are absent from work.  (Id.)  Enright asserts that Commissioners Benner, Naylor, and Rudy are members of the prison board and thus responsible for the customs, policies, and practices of Perry County Prison.  (Id.)

As a result of the aforementioned events, Enright alleges that he suffers from drop foot, a foot ulcer, neuropathic pain, a scar on his lip, decreased general health due to difficulty exercising, disfigurement of his left leg, and mental and emotional trauma.  (Id. at 13).

In his second amended complaint, Enright sets forth claims pursuant to the Sixth, Eighth, and Fourteenth Amendments, the Americans with Disabilities Act, the Rehabilitation Act, and state law.  (Id. at 13-27).  For relief, he seeks monetary damages.  (Id. at 27-29).

## III.   Perry County Defendants' Motions to Dismiss

### A.   Federal Law Claims

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

### 1.   Deliberate Indifference to Medical Needs

Enright alleges that the Perry County defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  He asserts that he entered Perry County Prison in generally good health, and his

condition deteriorated significantly during his incarceration, ultimately resulting in a lifelong disability.

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976).  In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  Id. (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis

or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

In the instant situation, the court finds that Enright's diabetes rises to the level of a serious medical condition for purposes of the Eighth Amendment analysis. The court must determine whether Enright has pled a deliberate indifference to that need.

Enright mainly alleges that medical care at Perry County Prison was inadequate and sparse, and his diabetes was not properly treated. (Doc. 58 at 11-13, 23, 25). Enright claims that he became ill on December 25, 2011, but was not treated until December 28, 2011. (Id. at 7). He asserts that his blood sugar level was 419 when tested on December 30, 2011, and it went untreated until January 4, 2011. (Id.) Due to the lack of medical treatment, Enright was found unresponsive and in a diabetic coma. (Id.) Enright required immediate treatment at an outside hospital and remained comatose in the intensive care unit for several days. (Id.) As a result of this episode, Enright suffers from the permanent disability of drop foot. (Id.)

Enright further asserts that his blood sugar levels were uncontrolled throughout his confinement at Perry County Prison, and he was never treated by a doctor for the uncontrolled blood sugar. (Id. at 10-11). Enright alleges that medical staff were frequently unavailable to treat his medical conditions. (Id.) He complains that correctional officers administered medication and monitored blood

sugar levels without any medical training.  (Id.)  Moreover, he allegedly received no treatment for his broken leg other than pain medication.  (Id.)

Enright further asserts that the medical devices that were either confiscated from him or denied to him were medically necessary.  (Id. at 5-6, 9).  He alleges that defendants have not complied with medical orders concerning his ambulation with a walker or cane, and have therefore hindered his ability to ambulate.  (Id.)  These allegations may support a claim that defendants have deliberately ignored or denied prescribed treatment.

Based on the foregoing, and viewing the facts in the light most favorable to Enright, the court will allow this claim to proceed.  The Perry County defendants' motion to dismiss Enright's deliberate indifference claim will be denied.

### 2. *Respondeat Superior*

The Perry County defendants argue that Enright fails to state a claim against them because they lack personal involvement in the alleged wrongs, and because Enright's allegations against them are based solely on the doctrine of *respondeat superior*.  (Doc. 60 at 10-11; Doc. 73 at 7-8).  Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."  Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor,

316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of "conduct, time, place, and persons responsible." Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

Additionally, prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004) (discussing Durmer, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. at 236. Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. See Rode, 845 F.2d at 1207.

Enright avers that "each defendant either took a direct action that violated his constitutional rights, such as disallowing him use of his necessary assistive devices," or that they were involved in prison policymaking. (Doc. 58 at 20, 23). Enright specifically alleges that defendants Yeingst and Long repeatedly refused to

provide him with assistive walking devices.  (Id. at 23).  He further alleges that each

Perry County defendant was responsible for the adoption and implementation of

prison policies.  (Id. at 20).  Enright sufficiently alleges that the Perry County

defendants were aware of or acquiesced in purported Eighth Amendment

violations.  Accordingly, the motion to dismiss Enright's deliberate indifference

claim, to the extent it relies on a *respondeat superior* theory of liability, will be

denied.

### 3.   *Monell Liability*

The Perry County defendants assert that Enright's second amended

complaint fails to state a claim for municipal liability under Monell v. New York

City Dep't of Social Services, 436 U.S. 658 (1978).  (Doc. 60 at 8-10).  A municipality

may be held liable under § 1983 "if the governmental body itself 'subjects' a person

to a deprivation of constitutional rights or 'causes' a person 'to be subjected' to such

deprivation."  Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell, 436 U.S.

at 692).  Thus, a plaintiff seeking to impose constitutional liability on a municipality

must meet the difficult burden of proving that "action pursuant to official municipal

policy" caused their injury.  Monell, 436 U.S. at 691, 694.  This requires the plaintiff

to identify an official or unofficial municipal policy—including "decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so

persistent and widespread as to practically have the force of law," Connick, 563 U.S.

at 61 (citations omitted), and demonstrate that said policy was the "moving force"

behind his injury, Berg v. Cty. of Allegheny, 219 F.3d 261, 275-76 (3d Cir. 2000)

(quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

Additionally, the absence of a policy may provide the basis for a <u>Monell</u> claim if sufficiently pled.  In <u>Natale</u>, the Third Circuit determined that a prison with "no policy ensuring that an inmate having need of medication for a serious medical condition would be given that medication during the first 72 hours of . . . incarceration" was a " 'particular[ly] glaring omission' in a program of medical care."  <u>Natale</u>, 318 F.3d at 584-85 (quoting <u>Brown</u>, 520 U.S. at 410-11).

Enright alleges that defendants Yeingst and Long "are directly responsible for the policies of PCP, either by actively creating them, or passively allowing them to be enforced."  (Doc. 58 at 20).  He further alleges that defendants Benner, Naylor, and Rudy are members of the prison board and thus responsible for creating the policies of the Perry County Prison, or allowing their enforcement.  (<u>Id.</u>)  Enright asserts that defendants created policies that allowed the prison to operate with inadequate medical staff and granted correctional officers the authority to dispense medication and assess inmates' medical needs, despite having no medical training. (<u>Id.</u> at 21-22).  He alleges that Perry County Prison has no policy to provide medical coverage during weekends, evenings, or holidays, or when medical staff members are absent from work; no policy to ensure that correctional officers possessed the necessary medical skills to perform medical duties; and no policy to maintain glucometers, or ensure that inmates had their own glucometers and insulin vials. (<u>Id.</u> at 22-23).

Enright adequately claims that the Warden, Deputy Warden, and members of the Prison Board failed to implement appropriate policies and allowed the prison to operate with purportedly inadequate policies.  Enright also alleges a total absence

of a policy concerning medical staffing coverage, medical training, and proper monitoring of instruments used for diabetic inmates.  In light of these allegations, the motion to dismiss Enright's <u>Monell</u> claim will be denied.

### 4.   *Statute of Limitations*

The Perry County defendants argue that Enright's Sixth Amendment, ADA, and substantive due process claims are time-barred and must be dismissed.  (Doc. 60 at 15-18; Doc. 73 at 11-14).  "A statute of limitations defense may serve as the basis for a Rule 12(b)(6) motion 'where the complaint facially shows noncompliance with the limitations period.'"  <u>McSpadden v. Wolfe</u>, No. 07-1263, 2008 WL 910010, at *4 (E.D. Pa. Apr. 2, 2008) (citing <u>Oshiver</u>, 38 F.3d at 1385 n.1).  It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions.  <u>Wilson v. Garcia</u>, 471 U.S. 261, 266-67 (1985); <u>Urrutia v. Harrisburg Cty. Police Dep't</u>, 91 F.3d 451, 457 n.9 (3d Cir. 1996).  In Pennsylvania, the statute of limitations for a personal injury action is two years. <u>See</u> 42 PA. CONS. STAT. § 5524.

However, the date when a cause of action accrues remains a question of federal law.  <u>Smith v. Wambaugh</u>, 887 F. Supp. 752, 755 (M.D. Pa. 1995).  Under federal law, a civil rights cause of action accrues, and the statute of limitations begins to run, when the plaintiff "knew or should have known of the injury upon which [the] action is based."  <u>Sameric Corp. of Del., Inc. v. City of Phila.</u>, 142 F.3d 582, 599 (3d Cir. 1998).  The limitations period begins to run if a plaintiff has sufficient notice to place him on alert "of the need to begin investigating."  <u>Gordon v. Lowell</u>, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000) (citing <u>Zeleznik v. United States</u>,

770 F.2d 20, 22-23 (3d Cir. 1985)).  Under Gordon, a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong."  Id.

Enright asserts Sixth Amendment, ADA, and substantive due process claims for the first time in his second amended complaint filed October 30, 2015.  (See Doc. 58).  The second amended complaint explicitly states that "[e]vents that occurred in [Perry County Prison] happened between June 2011 and June 2012.  Events that occurred in Carlisle Regional Medical Center . . . happened from January 5th, 2012 - January 17th, 2012."  (Id. at 5).  Hence, Enright's Sixth Amendment, ADA, and substantive due process claims appear, on their face, to be barred by the applicable two-year statute of limitations.

The parties focus their arguments on Enright's *pro se* status at the time he filed the second amended complaint.  Enright contends that the court should defer to his *pro se* status to apply a lower pleading standard than would be imposed on counseled plaintiffs.  (Doc. 78 at 8).  He intimates that, although he did not clearly reference the Sixth Amendment, ADA, or substantive due process in his initial and first amended complaint, the factual groundwork for those claims is apparent in each predecessor pleading.  (See id.)  In reply, the Perry County defendants argue that Enright fails to "identify the location in the prior pleadings where those claims were supposedly asserted."  (Doc. 84 at 5).

The court finds that claims asserted for the first time in Enright's second amended complaint properly "relate[] back" to his initial, timely pleading.  FED. R. CIV. P. 15(c).  Pursuant to Federal Rule of Civil Procedure Rule 15(c)(1)(B), an amendment to a pleading "relates back to the date of the original pleading when . . .

15

the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—*or attempted to be set out*—in the original pleading." FED. R. CIV. P. 15(c)(1)(B) (emphasis added). Courts generally "allow relation back when the claim is based on the same facts as the original pleading and only changes the legal theory." 3-15 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 15.19[2] (3d ed. 2016). The court finds that the Sixth Amendment, ADA, and substantive due process claims asserted in Enright's second amended complaint arise from the same factual nexus which undergirds Enright's Eighth Amendment claim.

Nonetheless, the late-asserted claims fail separately on their merits. As a threshold matter, Enright fails to meaningfully defend the substance of these claims in opposing the Perry County defendants' motion. (See Doc. 79 at 8). District courts generally deem claims to be waived or abandoned when litigants fail to substantively support the claim in response to a dispositive motion. See Brice v. City of York, 528 F. Supp. 2d 504, 518 n.19 (M.D. Pa. 2007) (citing D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999)); Brown v. Pa. State Dep't of Health, 514 F. Supp. 2d 675, 678 n.7 (M.D. Pa. 2007) (same). The court deems Enright to have abandoned his Sixth Amendment, ADA, and substantive due process claims by failing to meaningfully respond to the Perry County defendants' substantive challenge thereto.

In any event, the court observes that Enright's new claims are patently meritless. The Sixth Amendment of the United States Constitution applies only in the criminal setting and finds no applicability in the instant action. See Kirby v. Illinois, 406 U.S. 682, 690 (1972) (holding that Sixth Amendment guarantees only

16

apply to "criminal prosecutions").  For purposes of his purported ADA claim,

Enright fails to actually allege a violation of the ADA; he alleges, in purely

conclusory fashion, that he was denied "access to activities and programs made

available by a public entity," but fails to identify with any degree of clarity what

program or activity he was excluded from or to connect that exclusion to his

perceived disability.  See 42 U.S.C. § 12132 (establishing a cause of action for

qualified individuals with disabilities who show that, "by reason of such disability,"

defendants excluded them "from participation in . . . the benefits of the services,

programs, or activities of a public entity").  And Enright's allegations fall well short

of establishing the requisite culpability for a substantive due process claim, which

will lie only in cases of "the most egregious," conscience-shocking official conduct.

Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).  For all of these reasons, the court

will grant the Perry County defendants' motion to dismiss Enright's Sixth

Amendment, ADA, and substantive due process claims.[2]

---

[2] A district court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given."  Foman v. Davis, 371 U.S. 178, 182 (1962).  An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted.  In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).  This is Enright's second amended complaint.  To date, Enright has been unable to adequately articulate a viable Sixth Amendment, ADA, or substantive due process claim.  Allowing Enright another opportunity to amend would be futile.

## IV.   **Medical Defendants' Motion to Dismiss**

The medical defendants assert that Enright fails to state a deliberate indifference claim, fails to state a claim under the Americans with Disabilities Act or the Rehabilitation Act, and fails to state a cause of action under Monell. (Doc. 71 at 6-13). The court will address these arguments *seriatim*.

### A.   **Deliberate Indifference to Medical Needs**

The medical defendants assert that Enright fails to allege any facts which could support a claim that they acted with deliberate indifference to his medical needs. As stated *supra*, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse, 182 F.3d at 197. In the context of medical care, the relevant inquiry is whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. See Monmouth Cty., 834 F.2d at 346.

In the second amended complaint, Enright alleges that he was denied adequate medical treatment while housed at Perry County Prison. Enright asserts that PrimeCare's contract to provide only one nurse to Perry County Prison was wholly inadequate. (Doc. 58 at 11). He alleges that defendant Heckman was frequently absent from work and there was no policy in effect to provide for medical coverage in her absence. (Id. at 10-11, 25). As a result, Enright's medical conditions were untreated for several days, on several occasions. In one instance, Enright alleges that his blood sugar level was extremely high, he did not receive medical treatment for days, and he was ultimately discovered unresponsive in a diabetic

coma.  (Id. at 6-7).  He further claims that blood sugar logs were infrequently or

never reviewed by PrimeCare staff.  (Id. at 11).

Accepting the factual allegations as true, and viewing them in a light most

favorable to Enright, he has adequately alleged a deliberate indifference claim.  The

medical defendants' motion to dismiss this claim will be denied.

### B.   **Monell Liability**

Enright also brings a Monell claim against PrimeCare, the company that

employs defendant Heckman.  Under § 1983, a private corporation contracted by a

prison to provide healthcare for inmates cannot be held liable on a *respondeat*

*superior* theory; rather, a plaintiff must allege that the entity had a policy, practice,

or custom which caused injury to the plaintiff.  Adonai-Adoni v. King, No. 07-3689,

2009 WL 890683, at *2 (E.D. Pa. Mar. 31, 2009) (noting that a private medical

provider can only be liable under § 1983 if claim rests "upon some policy, practice

or custom"); see also Carpenter v. Kloptoski, No. 1:08-CV-2233, 2010 WL 891825, at

*8 (M.D. Pa. Mar. 10, 2010) (concluding that a § 1983 claim against a private medical

service solely on the basis that it was responsible for providing health care is

subject to dismissal).

Enright alleges that PrimeCare "is responsible for the policies of [Perry

County Prison] either by actively participating in the creation of said policies, or

acquiescing to operate by them."  (Doc. 58 at 21).  He alleges that the policy in effect

provided inadequate medical staff at Perry County Prison, and inmates had

minimal access to medical care and staff.  (Id.)  He asserts that there is no policy

in effect to ensure that the there is adequate medical coverage at the prison on

weekends, evenings, or holidays, or when staff are absent from work.  (Id. at 22).

He claims that PrimeCare has a policy that requires medical staff to review blood

sugar logs however, in actuality, the logs were "infrequently or never reviewed."

(Id.)  Enright also alleges that defendant Heckman "is responsible for the policies

of [Perry County Prison], by either following unlawful or deficient policies, or by

failing to follow proper or legal policies."  (Id. at 21).  At this preliminary stage,

Enright has sufficiently alleged facts demonstrating that any perceived deficiency

in his medical treatment may be the result of PrimeCare's policies, customs, or

practices.  Consequently, the court will allow this claim to proceed.

### C.    Americans with Disabilities Act

The medical defendants next move to dismiss any claim under the

ADA or Rehabilitation Act.  (Doc. 71 at 11-12).  "Whether suit is filed under the

Rehabilitation Act or under the [ADA], the substantive standards for determining

liability are the same."  McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 95 (3d

Cir. 1995).  However, the Rehabilitation Act also requires plaintiff to show that

the he was excluded from a "program or activity receiving Federal financial

assistance."  29 U.S.C. § 794(a).  Like ADA claims, Rehabilitation Act claims are

subject to a two-year statute of limitations.  See Disabled in Action of Pa. v. Se. Pa.

Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008).

The court held *supra* that Enright's ADA claim relates back to the filing of his

original complaint and is thus timely.  See Fed. R. Civ. P. 15(c)(1)(B).  Nonetheless,

individual defendants such as PrimeCare and Heckman are not "public entities"

within the meaning of the ADA and are, therefore, not subject to suit.  Emerson v.

Thiel Coll., 296 F.3d 184, 189 (3d Cir. 2002).  The ADA defines "public entity" as: "(A)

any State or local government; (B) any department, agency, special purpose district,

or other instrumentality of a State or States or local government; and (C) the

National Railroad Passenger Corporation, and any commuter authority . . . ."  42

U.S.C.A. § 12131.  The plain language of § 12132 applies only to public entities not

individuals.  Yeskey v. Pennsylvania, 76 F. Supp. 2d 572, 575 (M.D. Pa. 1999)

("Individuals are not liable under Title II because it prohibits discrimination in

programs of a 'public entity' or discrimination 'by any such entity' and 'public

entity' is not defined in Title II's definitional section to include individuals.").

Courts addressing the viability of ADA claims against prison health services

providers, including PrimeCare, regularly hold that such entities do not fall within

the scope of Title II.  See Henry v. Buskirk, No. 08-1348, 2011 WL 767540, at *5 (E.D.

Pa. Feb. 24, 2011) (collecting cases).  This court similarly finds that PrimeCare and

Heckman do not qualify as public entities as defined by the ADA.  Therefore, the

ADA is inapplicable to them and their motion to dismiss Enright's ADA claim will

be granted.

## V.  **Conclusion**

For the reasons set forth above, defendants' motions (Docs. 59, 70, 72) to dismiss will be granted in part and denied in part.[3]  An appropriate order shall issue.

/S/ Christopher C. Conner
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       September 15, 2016

---

[3]  The medical defendants also move the court to dismiss a perceived state law claim for medical malpractice asserted in Enright's second amended complaint. (Doc. 71 at 13-14).  In response to the medical defendants' motion, Enright expressly states that he does "not allege[] . . . that medical malpractice was committed."  (Doc. 81 at 8).  To the extent Enright's second amended complaint may be construed as stating a claim for medical malpractice, that claim has been abandoned.  (See id.)